United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABHIJIT PRASAD,<br><br>        Plaintiff,<br><br>   v.<br><br>SANTA CLARA DEPARTMENT OF SOCIAL SERVICES, et al.,<br><br>        Defendants. | Case No. 14-cv-00179-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 19] |

Plaintiff Abhijit Prasad ("Plaintiff") filed the instant civil rights lawsuit against individual defendants Nana Chancellor and Ronnie Smith (collectively, "Individual Defendants"), the County of Santa Clara ("County"), and the Santa Clara County Department of Social Services ("DSS") (collectively, with Individual Defendants and County, "Defendants"), asserting claims under 42 U.S.C. §§ 1983 and 1985(3), as well as a state law claim for intentional infliction of emotional distress. (Compl., ECF 1) Defendants seek to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and, alternatively, request that the Court abstain from Plaintiff's § 1983 and § 1985(3) claims under the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37 (1971). (Def.'s Mot., ECF 19)

The Court heard oral argument on the motion on June 26, 2014, after which it took the matter under submission. After considering the parties' respective written submissions and the oral argument of counsel, for the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

## I. BACKGROUND

### A. Factual Allegations

The following facts from the Complaint are taken as true and viewed in the light most favorable to Plaintiff:

Plaintiff is divorced and the father of two children. Although Plaintiff does not have a criminal record, he has been the subject of three "Child Protective Services" investigations initiated upon allegations of domestic violence and child abuse made by Plaintiff's ex-wife.[1] (Compl. ¶¶ 12-13) Two of these investigations were closed as unfounded. (*Id.* ¶ 12) The third, and most recent, of these investigations was conducted by defendant DSS in November 2009 based upon allegations of child abuse. (*Id.* ¶¶ 12-13) While Plaintiff was not criminally charged, DSS determined that the allegation was "substantiated" and notified the California Department of Justice ("CDJ") of the finding. (*Id.* ¶¶ 13-14) Plaintiff was notified of this determination in February 2010 and simultaneously was alerted that the report had been transmitted to CDJ for inclusion in the Child Abuse Central Index ("CACI"). (*Id.* ¶¶ 14, 18); *see also* Cal. Penal Code § 11169(a)-(c).

Plaintiff requested and received an administrative grievance hearing to challenge his listing in the CACI. (*Id.* ¶¶ 20-22); *see also* Cal. Penal Code § 11169(d). Plaintiff alleges that the hearing was delayed due to alleged misconduct and misrepresentations by the Individual Defendants. (*Id.* ¶ 21) A hearing was eventually conducted in August 2010 before an Administrative Grievance Review Officer. (*Id.*) The Individual Defendants attended the grievance hearing, and defendant Chancellor is alleged to have testified. (*Id.* ¶ 23) The hearing officer recommended that the allegation of abuse remain substantiated. (*Id.* ¶ 22)

Some time after the grievance hearing, Plaintiff filed a Petition for Writ of Mandate in Santa Clara County Superior Court to change DSS's finding to "unfounded" and thereby remove his name from the CACI. (*Id.* ¶ 25; Def.'s Request for Judicial Notice ("RJN") Exh. D, ECF 20)

---

[1] It is unclear from the Complaint where the first two investigations were conducted, and by what agency.

2
Case No. 14-cv-00179-BLF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

The court denied Plaintiff's petition, and that matter is pending appeal before the Court of Appeals for the Sixth Appellate District. (Compl. ¶ 25)

In conjunction with the reporting of the substantiated abuse allegation in the CACI, it appears that Plaintiff's personal information was also input into the statewide Child Welfare System/Case Management System ("CWS/CMS"). (*Id.* ¶ 26-28). Plaintiff alleges that he was not informed of his inclusion in the CWS/CMS during the CACI proceedings, and it is not clear when Plaintiff discovered this second database. (*Id.* ¶ 26) In an effort to remove his information from the CWS/CMS, Plaintiff sought to "offer live testimony, call witnesses or examine those witnesses whose statements were considered by County when they placed his personal information in the CWS/CMS." (*Id.* ¶ 27) Plaintiff alleges, however, that he was informed by the Individual Defendants that "there is no appeal mechanism or a right to a hearing for removal from CWS/CMS," (*id.* ¶ 28), and as such Plaintiff was never afforded an opportunity to remove the "conclusive report" from the CWS/CMS, (*id.* ¶ 30).

### B. The CACI and CWS/CMS Databases

The CACI is a database of "reports of suspected child abuse and severe neglect" that CDJ is required to maintain under the California Child Abuse and Neglect Reporting Act ("CANRA"). Cal. Penal Code §§ 11170(a)(2). Although CDJ maintains the database, it is only responsible for ensuring that the index "accurately reflects the report it receives from the submitting agency." *Id.* Local child welfare agencies are responsible for investigating child abuse allegations and for "the accuracy, completeness, and retention of the reports" in the CACI. *Id.*; *see also id.* at § 11166; Cal. Welf. & Inst. Code § 300.

When a child welfare agency receives a report of child abuse, the agency conducts "an active investigation," (Def.'s Mot. 5:6), and determines whether the report is substantiated, inconclusive, or unfounded, (*id.* 5:6-7). These determinations are statutorily defined by CANRA. Cal. Penal Code § 11165.12. If a report is found to be substantiated, the agency is required to notify CDJ so that the report may be listed in the CACI. Cal. Penal Code § 11169(a). Because certain employers and licensing agencies are required by law to consult the CACI, the Ninth

3

Circuit determined that due process requires that individuals listed on the CACI be afforded a hearing to challenge their inclusion in the index. *See Humphries v. Cnty of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009), *rev'd on other grounds and remanded sub nom. Los Angeles Cnty., Cal. v. Humphries*, 131 S. Ct. 447 (2010). Consistent with that requirement, the reporting agency is now also required to notify a suspected abuser of the transmission of a substantiated report to the CDJ and provide a due process "grievance hearing" for the suspect to challenge his or her inclusion in the CACI. Cal. Penal Code § 11169(c)-(d). If the challenge is successful and the report is found to no longer be substantiated, the agency must inform the CDJ, and the report must be removed from the CACI. *Id.* at (a); (*see also* Def.'s RJN Exh. A) Only substantiated abuse allegations are reported in the CACI and, as such, only substantiated reports trigger the statutorily-mandated due process hearing under CANRA.

Under CANRA, "[a]gencies that are required to receive reports of suspected child abuse or neglect shall maintain a record of all reports received." Cal. Penal Code § 11165.9. Up until 1989, this meant that such records were likely kept by each county in "locally designed method[s] of managing cases [that] ranged from manual, paper-file systems to computer-based systems." (Def.'s RJN Exh. B, at 2) In 1989, the California legislature authorized "the development and implementation of a statewide computer system to automate the case management, services planning, and information gathering functions of child welfare services." (*Id.* at 1) This system, the CWS/CMS is intended to, *inter alia*, consolidate collection and reporting of information for programs closely related to child welfare services and to "[p]rovide child welfare services workers with immediate access to child and family specific information in order to make appropriate and expeditious case decisions." Cal. Welf. & Inst. Code § 16501.5. Information from investigations of every child abuse allegation in the state is stored in the CWS/CMS, together with the outcome of each investigation, whether it is unfounded, inconclusive, or substantiated.[2] If a substantiated

---

[2] Neither party has cited to a statutory provision, policy, or judicially noticeable document that expressly states that this is the case. The parties, however, both agree that every abuse allegation is recorded in the CWS/CMS, regardless of the outcome of the investigation. (*See* Def.'s Mot. 9:18-20; Pl.'s Opp. 8:26-9:8 (Plaintiff purportedly quotes from Defendants' Exhibit B, but the

4
Case No. 14-cv-00179-BLF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

abuse allegation listed in the CACI is later determined to be inconclusive or unfounded, the report is removed from the CACI but remains in the CWS/CMS where the information is updated to reflect the changed disposition. (Def.'s RJN Exh. A, at 3) The CWS/CMS, unlike the CACI, is only accessible to child welfare services workers and certain other authorized personnel or agencies engaged in related services. (Def.'s Mot. 9:20-24; *see, e.g.*, Pl.'s RJN Exh. 7)

## II.   LEGAL STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A Rule 12(b)(6) motion is to be decided on the face of the complaint, but the Court may consider "items subject to judicial notice, matters of public record, [and] orders." 5B Wright & Miller Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2004); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

To survive a Rule 12(b)(6) motion, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is insufficient to offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* (citing and quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Iqbal*,

---

quoted passage is not in that document); *see also* Pl.'s RJN Exh. 2, at 1, ECF 21-3)

556 U.S. 662, 678 (internal quotations omitted).

If a motion to dismiss is granted, a court should normally grant leave to amend, "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted).

### III.    REQUESTS FOR JUDICIAL NOTICE

As an initial matter, both parties have submitted Requests for Judicial Notice ("RJN") of documents outside of the Complaint.  Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either "generally known" within the court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court must take notice of such facts "if a party requests it and the court is supplied with the necessary information." *Id.* 201(c).

Defendants request that the Court take notice of four documents: (1) an All County Information Notice No. 1-22-08 issued by the California Department of Social Services ("CDSS") on March 26, 2008, (Def.'s RJN Exh. A); (2) a print-out of a CDSS informational webpage titled "Child Welfare Services/Case Management System (CWS/CMS)," (*id.* Exh. B); (3) an Order After Hearing filed in Santa Clara County Superior Court Action No. 111CV203380 on November 28, 2012, (*id.* Exh. C); and (4) a Second Amended Petition for Review/Alternative Writ of Mandamus filed by Plaintiff in Santa Clara Superior Court Action No. 111CV203380 on June 22, 2012, (*id.* Exh. D).

Plaintiff requests that the Court take notice of seven documents: (1) an Order Denying Motion for Summary Judgment in *Castillo v. County of Los Angeles*, Case No. 2:12-cv-02760-ODW (C.D. Cal.), (Pl.'s RJN Exh. 1, ECF 21); (2) an All County Letter issued by the CDSS dated April 24, 2012, (*id.* Exh. 2); (3) a Settlement Order in *Castillo*, (*id.* Exh. 3); (4) the Appellant's Reply Brief that Plaintiff filed in the California Court of Appeal, Sixth Appellate District, Case No. H039167, (*id.* Exh. 4); (5) an Order Continuing Order to Show Cause Re Settlement in *Castillo*, (*id.* Exh. 5); (6) a Report to Court Re: Status of Settlement filed with the California Court

6

1   of Appeal, Second Appellate District in Case No. BS136579, (*id.* Exh. 6); and (7) a print-out from
2   a webpage by CloverLeaf Solutions titled "Child Abuse Notifications," (*id.* Exh. 7).

3   Neither party objects to the other's request for judicial notice, and all documents submitted
4   by both sides contain matters of public record that are not subject to reasonable dispute. As such,
5   the Court GRANTS both Defendants' and Plaintiff's Requests for Judicial Notice, but the
6   documents will only be addressed to the extent they are relevant to the Court's analysis.

## IV.   DISCUSSION

Plaintiff asserts two federal law claims under 42 U.S.C. §§ 1983 and 1985(3) and one state law claim for intentional infliction of emotional distress against all Defendants. The Court addresses each of these claims in turn.

### A.   Plaintiff's Section 1983 Claim

Plaintiff's First Cause of Action ("First COA") is made pursuant to 42 U.S.C. § 1983 for the alleged deprivation of Plaintiff's "life, liberty or property without due process of law" as a result of Defendants' "unlawful policies, customs, and habits." (Compl. ¶¶ 40-44)

As a preliminary matter, although Plaintiff has asserted this claim against all Defendants, the Court interprets this claim as one for municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (*See* Pl.'s Opp. 9:12-10:22) Plaintiff failed to allege any individual liability under § 1983 for the "Unlawful Policies, Customs and Habits" complained of in the First COA. (*See* Compl. ¶¶ 40-44) The Individual Defendants are both alleged to be employees of the County, (*id.* ¶¶ 5-6), and it is not apparent from the Complaint that they have any role as supervisor or policymaker. Accordingly, the First COA is DISMISSED, without leave to amend, as to the Individual Defendants.

The gravamen of Plaintiff's *Monell* claim is that the County (and DSS) deprived Plaintiff of procedural due process by failing to provide any mechanism through which he could challenge the listing of a substantiated abuse allegation in the CWS/CMS. (*See* Compl. ¶ 30 (referring to "County's refusal to provide [Plaintiff] an opportunity to remove the *conclusive* report from CWS/CMS") (emphasis added))

### i. The Complaint Fails to State a Procedural Due Process Claim

Defendants contend that the First COA fails as a matter of law because Plaintiff received a state law mandated due process hearing to challenge the substance of DSS's determination that the third abuse allegation against him was substantiated. (Def.'s Mot. 8:15-24) As such, Plaintiff is not entitled to a second hearing on the same issue, as the CWS/CMS reports the same information that was substantively challenged and affirmed in the CACI hearing. (*Id.* 9:5-17) In the alternative, Defendants request that the Court exercise *Younger* abstention in light of the pending appeal of Plaintiff's writ of mandate. (*Id.* 11:21-12:19) Plaintiff contests the assertion that *Younger* abstention is appropriate in this instance and argues that he is entitled to a due process hearing because Defendants never advised him that he was in the CWS/CMS, all the while knowing that "the false information they put into CWS/CMS would impact plaintiff in adoption, family law matters, employment, or provide him with a hearing [sic]." (Pl.'s Opp. 11:12-14; *see also id.* 10:17-20) The Court need not reach the *Younger* issue because Plaintiff fails to state a procedural due process claim.

Plaintiff's claim seeking due process in connection with the CWS/CMS database is somewhat obtuse and is perhaps best understood by identifying what Plaintiff's claim is not about. Plaintiff is not arguing that the County did not provide him with any mechanism to substantively challenge DSS's conclusion that the third abuse allegation was substantiated. As already described, Plaintiff received a grievance hearing in connection with the CACI listing, challenged the DSS conclusion therein, obtained judicial review of the administrative outcome upholding the DSS conclusion, and is now appealing the state Superior Court's affirmance of that hearing determination. (Compl. ¶¶ 22, 25) Further, Plaintiff is not challenging in this proceeding the outcome of the CACI hearing *per se*, as that challenge is wending its way through the state appeals system, and Plaintiff has not identified any authority or government procedure permitting this Court to overrule the findings of a state administrative agency and of a state court. (*Id.*)

With this understanding, it becomes apparent that Plaintiff's due process claim can only be based on the County's alleged failure to provide a second hearing to challenge inclusion of the

same DSS substantiation in another, less widely accessible database—the CWS/CMS. (*See* Compl. ¶ 30 (referring to "County's refusal to provide [Plaintiff] an opportunity to remove the *conclusive* report from CWS/CMS") (emphasis added))  The question that the Court must answer is thus whether due process requires that a person, after receiving a due process hearing and availing himself of administrative and state judicial review procedures to challenge the substantive finding of an agency reported in one database, should be afforded a second hearing to challenge the same agency finding because he later discovers that the finding is reported in another database.[3]  In answer to this question, the Court agrees with Defendants that Plaintiff's "claim of entitlement to a second hearing *on the very same issue already decided* [in a previous hearing] is not supported by his Complaint or any constitutional principle." (Def.'s Mot. 9:12-13)

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  To establish a violation of procedural due process, a plaintiff must allege (1) that a liberty or property interest has been interfered with by the State, and (2) the procedures attendant upon that deprivation were constitutionally inadequate. *Humphries*, 554 F.3d 1170, 1184-85 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Assuming, for the sake of argument, that listing DSS's finding of a substantiated child abuse allegation in the CWS/CMS deprives Plaintiff of some liberty interest significant enough to trigger due process,[4] Plaintiff has neither explained how that interest is distinct from those affected

---

[3] Defendants have generously interpreted Plaintiff's claim to assert due process rights to challenge the inclusion in the CWS/CMS of abuse allegations that are determined to be unfounded. (Def.'s Reply 2:18-20)  The Court does not find that the allegations in the Complaint have made such a direct challenge to the constitutionality of storing records of all abuse allegations in the CWS/CMS.  At the June 26, 2014 hearing, Plaintiff acknowledged that his claims against the Defendants are not based on these two prior determinations and that they are alleged merely to provide background information.

[4] The Court notes that Plaintiff's generic allegations of injury are entirely conclusory.  There are no facts alleged to support Plaintiff's assertion that listing in the CWS/CMS—independent of

9
Case No. 14-cv-00179-BLF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

by his listing in the CACI, nor how the process that he has received thus far in challenging the substantive finding underlying both the CACI and CWS/CMS listings is constitutionally inadequate. Not only has Plaintiff been afforded a due process hearing in order to challenge the DSS determination, he has also availed himself of California's robust writ of mandate procedure, which provides independent judicial review and a meaningful opportunity to raise constitutional issues. Cal. Civ. Proc. Code § 1094.5; *see San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1095 (9th Cir. 2008).

To be sure, Plaintiff has every right to maintain that the abuse allegation was falsely substantiated by DSS and may challenge that finding through the California court system. Plaintiff has not, however, identified any government procedure or principle of due process stating that he is entitled to a parallel *second* hearing that would, if Plaintiff obtains his desired outcome through a second hearing, result in an administrative determination that is inconsistent with the one from an earlier first hearing. Plaintiff's reliance on *Castillo v. County of Los Angeles*, 959 F. Supp. 2d 1255 (C.D. Cal. 2013), is inapposite here because that case turned on the denial of *any* opportunity to challenge an inconclusive investigation outcome listed only in the CWS/CMS. *Id.* at 1258. The *Castillo* Court did not determine the amount of process due to a suspected abuser challenging an inconclusive report in the CWS/CMS, nor whether, in the case of a substantiated allegation, any process is due in addition to and on top of the legally mandated CACI hearing where, as in the situation before this Court, a suspected abuser seeks to challenge the inclusion of the same DSS determination in both the CACI and the CWS/CMS.

It thus appears, from every angle, that Plaintiff's request for a hearing to challenge the CWS/CMS listing is nothing more than a thinly veiled attempt to re-litigate in a federal forum the substantive DSS determination that was affirmed in his CACI grievance hearing. This is plain from Plaintiff's request that "the Court issue a permanent injunction requiring the County of Santa

---

listing in the CACI—has "restricted Plaintiff's right and ability to fully pursue his profession and earn a living; impacted his ability to obtain placement of his children; obtain other children; his ability to obtain guardianship of a child; licensure; and his ability to adopt a child." (Compl. ¶ 41)

10
Case No. 14-cv-00179-BLF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Clara, through its Department of Social Services, to modify the referral disposition against Plaintiff." (Compl. ¶ 56)  Plaintiff has provided no explanation why the process already afforded to Plaintiff—and continuing to be afforded to Plaintiff in the form of meaningful judicial review in state court—is insufficient.

As such, Plaintiff has failed to state a legally sufficient procedural due process claim against the County.  Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's First COA.

### ii. Leave to Amend

At the June 26, 2014 hearing, counsel for Plaintiff repeatedly averred that the CWS/CMS database contains additional information about Plaintiff that is not in the CACI.  Such information allegedly includes Plaintiff's personal identifying and demographic information, witness statements, investigative reports, and findings of case workers.  Plaintiff admitted that he is not challenging the statute authorizing the CWS/CMS or the constitutionality of the California law requiring that reports of child abuse be stored in the CWS/CMS—that would be an entirely different lawsuit than that which appears on the face of the Complaint.  Rather, Plaintiff contends that he has a right to know of his inclusion in the CWS/CMS, review the information about him in that database, and challenge any errors.  Plaintiff does not contend that everything in the CWS/CMS is erroneous, only that he should be afforded an opportunity to review the information in the CWS/CMS and challenge anything erroneous.

The problem with Plaintiff's argument is that it is nowhere alleged in the Complaint that he seeks to challenge "additional" information in the CWS/CMS that is not in the CACI—there are no allegations that the information in the two databases is different and there are no allegations that the "additional" information in the CWS/CMS is causing harm to Plaintiff that is separable or different from that already caused by the CACI listing.  (*See generally* Compl.)  Plaintiff requested leave to amend in order to allege these additional facts.  Although the Court is skeptical that amendment would identify a procedural due process claim that is anything other than an attempt to re-challenge the DSS determination that was affirmed at the CACI hearing, Plaintiff should be

given an opportunity to articulate such a claim. As such, Plaintiff shall have leave to amend to more clearly allege the differences between the CACI and CWS/CMS databases, and why these differences entitle him to another due process hearing.

### B.  Civil Conspiracy Claim (Second COA)

Plaintiff's Second Cause of Action ("Second COA"), pursuant to 42 U.S.C. § 1985(3), alleges civil conspiracy to deprive Plaintiff of "his rights to full and equal benefits of all laws." (Compl. ¶¶ 45-49) Plaintiff's claim for "civil conspiracy" is far from a picture of clarity. For example, Plaintiff is pursuing a conspiracy claim against all Defendants, but his claim relies exclusively on the alleged false testimony and withholding of "exculpatory" information by the Individual Defendants. (*Id.* ¶ 47) Plaintiff admits as much in his opposition brief, describing the complained of conspiracy as one between his ex-wife and DSS employees. (Pl.'s Opp. 13:13) Setting aside this apparent incongruity between the pleadings and Plaintiff's actual theory of the case, Plaintiff's conspiracy claim suffers from an even more fundamental problem: the Complaint indicates that Plaintiff is pursuing a claim under 42 U.S.C. § 1985(3). (Compl. ¶ 46) Plaintiff has not, however, alleged any "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971), which is an essential element of a § 1985(3) claim. *See id.*; *see also Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Defendants have generously interpreted Plaintiff's conspiracy claim as one for civil conspiracy under § 1983 and have proceeded to argue that the Individual Defendants' alleged false testimony is absolutely privileged and cannot form the basis for a conspiracy claim. (Def.'s Mot. 10:6-11:18) In the alternative, Defendants argue that the Court should abstain under *Younger*. (*Id.* 10:6-12:19) Plaintiff's conclusory opposition argument that he has adequately stated a claim for conspiracy does not address Defendants' privilege argument. (*See* Pl.'s Opp. 13:12-14:2) Plaintiff also does not clarify whether he is pursuing a conspiracy claim under §§ 1983 or 1985(3).

The Court agrees that witness testimony in a judicial setting (Family Court) or quasi-judicial setting (administrative hearing) is absolutely immune and cannot form the basis for a §

1983 claim based on conspiracy. *Briscoe v. LaHue*, 460 U.S. 325, 346 (1983); *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000). As previously noted, Plaintiff has also failed to allege an essential element of a conspiracy claim under § 1985(3). Therefore, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's Second COA.

Plaintiff shall have leave to amend only if Plaintiff is able to present a conspiracy claim that is not based on privileged conduct. To the extent Plaintiff is in fact advancing a civil conspiracy claim under § 1983 and not § 1985(3), the amended allegations should so state and allege the appropriate elements for the theory that Plaintiff is trying to advance.

As with Plaintiff's First COA, the Court declines to address Defendants' *Younger* argument until Plaintiff has filed a legally sufficient claim.

### C.  Intentional Infliction of Emotional Distress

Plaintiff's Third Cause of Action ("Third COA") is one for intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 50-55) Under California law, compliance with, or excuse from compliance with, the claim presentment requirement of California Government Code § 910 is an essential element of a claim against a public entity. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004). Defendants argue that Plaintiff has not alleged compliance with the claim presentment requirement because his own allegations indicate that he was on notice of his listing in the CACI since February 2010, yet he did not file a claim until 2013. (Def.'s Mot. 12:23-13:20) Plaintiff appears to argue that the gravamen of his IIED claim concerns his listing in the CWS/CMS, which he did not discover until August 2013. (Pl.'s Opp. 14:14) This August 2013 "discovery" of the CWS/CMS is not alleged anywhere in the Complaint.

A claim such as IIED is a claim for injury to the person that must be presented "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2. A cause of action "accrues" for claim presentment purposes on the date on which the cause would normally be deemed to accrue for the running of the statute of limitations if the action were between private parties. *Id.* § 901. A cause of action for IIED thus accrues "once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant." *Cantu v.*

*Resolution Trust Corp.*, 4 Cal. App. 4th 857, 889 (1992); *see also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806, 110 P.3d 914, 920 (2005) (cause of action accrues when all elements are complete).

Plaintiff has not identified any case law permitting application of the doctrine of delayed discovery to a claim for IIED. Even assuming that Plaintiff's delayed discovery of the CWS/CMS operated to extend the limitations period on such a claim, Plaintiff has not satisfactorily alleged, with particularity, the circumstances of the delay and discovery. *Dujardin v. Ventura County Gen. Hosp.*, 69 Cal. App. 3d 350, 356 (1977) (requiring allegations of "when the discovery was made, the circumstances surrounding the discovery, and facts which show that the failure to make an earlier discovery was reasonable, justifiable and not a result of plaintiff's failure to investigate or to act"); *Fox*, 35 Cal. 4th 797, 808 (2005) ("conclusory allegations [of delayed discovery] will not withstand demurrer"). As already noted, the Plaintiff does not allege anywhere in the Complaint the date on which he discovered his inclusion in the CWS/CMS, nor the circumstances under which he finally discovered that inclusion.

Plaintiff's IIED claim is also insufficient for failure to allege actionable emotional harm caused by the discovery of his inclusion in the CWS/CMS. The elements of IIED are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). The conduct on which Plaintiff bases his IIED claim is that of Defendants' allegedly "caus[ing] Plaintiff to be placed in those database*s*, subjected to false accusations of sex abuse, and pending criminal matters, and conspired among themselves to cover up their lawlessness and corruption." (Compl. ¶ 53 (emphasis added)) Much of this conduct allegedly occurred in 2010 and is incongruent with Plaintiff's argument that his emotional distress was caused by the discovery of his inclusion in the CWS/CMS, which he did not discover until August 2013. (Pl.'s Opp. 14:13-14, 15:13-14) Moreover, it is undisputed that any IIED claim based on Plaintiff's listing in the CACI would be

14
Case No. 14-cv-00179-BLF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

time-barred, yet Plaintiff's present allegations conflate his emotional distress over being listed in the CACI with that associated with his inclusion in the CWS/CMS. Plaintiff cannot circumvent the statutes of limitation by alleging a continuing injury resulting from completed conduct. *Vaca v. Wachovia Mortgage Corp.*, 198 Cal. App. 4th 737, 745 (2011). To the extent Plaintiff suffered actionably severe emotional harm discretely caused by the discovery of his inclusion in the CWS/CMS, Plaintiff must so allege.

Therefore, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's Third COA. Because Plaintiff has indicated that there is a conceivable way in which Plaintiff could plead an IIED claim that is not time-barred, Plaintiff will be granted leave to amend to more clearly articulate that theory.

## V.  ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED with leave to amend. Within **twenty-one (21) days** of the date of this order, Plaintiff shall file an amended complaint that complies with this order.

IT IS SO ORDERED.

Dated: July 8, 2014

BETH LABSON FREEMAN
United States District Judge