UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABHIJIT PRASAD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SANTA CLARA DEPARTMENT OF SOCIAL SERVICES, et al.,<br><br>　　　　　Defendants. | Case No.  14-cv-00179-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>[Re:  ECF 41] |

Is an individual entitled to a due process hearing to challenge his inclusion in one investigatory database after he received a hearing and lost a challenge to his inclusion in a derivative database that depends on the same allegation of child abuse?  That is the question presented by plaintiff Abhijit Prasad ("Plaintiff"), who alleges that his name and personal information was included in two statewide databases relating to child abuse allegations—the Child Abuse Central Index ("CACI") and the Child Welfare Services/Case Management System ("CWS/CMS")—but that he was notified of and afforded a due process hearing to challenge his inclusion in only one—the CACI.  In omitting to inform him about the existence of the CWS/CMS and failing to provide a separate opportunity to later challenge his inclusion in that database, Plaintiff contends that Defendant County of Santa Clara ("County")[1] violated his Fifth and Fourteenth Amendment right to procedural due process and seeks to hold the County liable under 42 U.S.C. § 1983.  Plaintiff also seeks to hold the County and county employees Ronnie Smith and Nana Chancellor (collectively, "Defendants") liable under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights, as well as for the state law tort of intentional infliction of emotional

---

[1] The Court understands that the County was incorrectly sued as "Santa Clara Department of Social Services."

distress.

Before the Court is Defendants' Motion to Dismiss First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot., ECF 41. The Court heard oral argument on the motion on November 6, 2014. After carefully considering the parties' respective written submissions, as well as the oral argument of counsel, the Court GRANTS Defendants' Motion to Dismiss with prejudice.

## I. BACKGROUND

The facts of this case, along with the statutory authority behind the CACI and CWS/CMS databases, are well known to the parties and are set forth in detail in the Court's July 8, 2014 Order Granting Motion to Dismiss With Leave to Amend. *See* Order at 3-5, ECF 39; *see also* Cal. Penal Code §§ 11164-11174.4 (Child Abuse and Neglect Reporting Act, or "CANRA"); Cal. Welf. & Inst. Code § 16501.5. The Court summarizes the essential allegations here.

Plaintiff is a divorced father of two who has been the subject of five child abuse investigations in three different counties. FAC ¶ 13. Two earlier allegations made in Alameda County were investigated and determined to be unfounded, an allegation made in Santa Clara County—the one at issue here—led to two investigations that resulted in a determination of "conclusive for sex abuse and emotional abuse,"[2] and the outcome of a fifth allegation made in Contra Costa County is unknown. *Id.* ¶ 14.

In February 2010, the County notified Plaintiff that the Department of Social Services ("DSS") had substantiated an allegation of child abuse against him and that, pursuant to state law, the County had reported his name to the California Department of Justice for inclusion in the CACI. *Id.* ¶¶ 39, 53. Plaintiff alleges that the allegation was falsely substantiated by individual defendants Chancellor and Smith as part of a conspiracy between Chancellor and Plaintiff's ex-wife to prevent Plaintiff from seeing his children in exchange for financial gain. *Id.* ¶¶ 61-65. Plaintiff also alleges that Defendants' actions were "due to Plaintiff's race and national origin," *id.*

---

[2] Plaintiff uses the terms "referral" and "investigation" interchangeably and alleges that the third "referral/investigation" was made in Santa Clara County in November 2009, was closed later that month, and was followed by a new "referral"—presumably the fourth—that was opened in December 2009 "with the same allegations." FAC ¶ 14.

2

¶ 9, because he is of Indian descent and the individual defendants are white, *id.* ¶¶ 5-6, 12.

Plaintiff invoked his right, pursuant to California law (CANRA), to an administrative grievance hearing to challenge the determination that triggered his listing in the CACI. *Id.* at ¶ 56; Cal. Penal Code § 11169(d). The grievance hearing was conducted in August 2010, and the hearing officer recommended that the allegation remain substantiated. FAC ¶ 59. Plaintiff identifies a number of irregularities in the conduct of the CANRA grievance hearing and is presently challenging the hearing officer's determination through the California state court system by way of a petition for writ of administrative mandamus.[3] *Id.* ¶¶ 53-67.

In August 2013, Plaintiff alleges he became aware for the first time that all of the abuse allegations against him had been reported into the statewide CWS/CMS database. *Id.* ¶ 13. Plaintiff "was told by" the individual defendants that "inclusion into 'some' government databases prevents him from being bonded, adoption, licensing, guardianship of children, and working with children or at schools where children are available," and believes that being in the CWS/CMS alone "will prevent Plaintiff from being bonded, getting high level jobs and/or working for the government, adoption, licensing, guardianship of children, and working with children or at schools where children are available." *Id.* ¶ 16. Plaintiff requested a hearing to "review or delete fraudulent or incorrect information" in the CWS/CMS, but the County denied his "repeated written requests" for an opportunity to "offer live testimony, call witnesses or examine those witnesses whose statements were considered by County" in placing his information in the CWS/CMS. *Id.* ¶¶ 67-68. Plaintiff alleges that the lack of any review mechanism or "right to a hearing for removal from CWS/CMS" deprived him of due process, *id.* ¶¶ 69-71, and seeks relief in the form of, *inter alia*, a "Determination of Factual Innocence" or a hearing for such a

---

[3] On January 23, 2015, the Court of Appeal for the Sixth Appellate District granted Plaintiff's appeal of the Superior Court's denial of his writ petition. This Court issued an Order to Show Cause seeking the parties' input on whether this action should be stayed given the potential impact that the Superior Court's reconsideration of the CACI determination could have on Plaintiff's claims concerning the CWS/CMS. *See* Order to Show Cause, ECF 49. Plaintiff requested that the Court not stay the case because his CWS/CMS claims are different from the CACI issues on appeal in the state court. Pl.'s Resp., ECF 50. The Court therefore VACATES the Order to Show Cause, declines to stay the action, and proceeds to decide on the merits of Defendants' Motion to Dismiss.

determination, and an injunction requiring the County to remove Plaintiff's name from the CWS/CMS or an opportunity to contest his inclusion in the system, *id.* ¶ 97.

On July 8, 2014, the Court dismissed Plaintiff's original complaint with leave to amend, and on July 21, 2014 Plaintiff filed the FAC. This motion followed.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In assessing the sufficiency of the pleadings, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

If a motion to dismiss is granted, a court should normally grant leave to amend, "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted). However, a district

4

1  court's discretion to deny leave to amend is "particularly broad" where a plaintiff has previously

2  amended. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Sisseton–*

3  *Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355 (9th Cir. 1996)).

### III. REQUESTS FOR JUDICIAL NOTICE

Although a Rule 12(b)(6) motion is to be decided on the face of the complaint, a court may consider "items subject to judicial notice, matters of public record, [and] orders." 5B Wright & Miller Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2004); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, both parties have requested that the Court take judicial notice of various documents outside of the FAC. Def.'s Request for Judicial Notice ("RJN"), ECF 42; Pl.'s RJN, ECF 44-1; Def.'s Supp. RJN, ECF 46. Defendants' Exhibits A and B, as well as all of Plaintiff's Exhibits, were judicially noticed in the Court's previous order and, as such, the parties' respective RJN's are GRANTED as to those documents. *See* Order at 6-7. Defendants' RJN is also GRANTED as to Exhibit D, which is a minute entry from the Superior Court for the County of Alameda that reflects facts not subject to reasonable dispute. Fed. R. Evid. 201(b). The Court need not take notice of Defendants' Exhibit C, as it is a copy of this Court's July 8, 2014 order, and Defendants' RJN is DENIED as to that document.

### IV. DISCUSSION

Plaintiff asserts three claims against Defendants under federal and state law. The First Cause of Action ("First COA") asserts that the County is liable pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for failing to provide Plaintiff with notice and an opportunity to challenge his inclusion in the CWS/CMS.[4] The Second Cause of Action ("Second COA") alleges a conspiracy to interfere with civil rights in violation of § 1985(3) involving all Defendants, and the Third Cause of Action ("Third COA") alleges intentional infliction of emotional distress ("IIED") by all Defendants. The Court agrees with

---

[4] This Court previously dismissed Plaintiff's First COA against individual defendants Smith and Chancellor with prejudice because Plaintiff appeared to be pursuing a *Monell* claim and failed to allege any individual liability under § 1983. *See* Order at 7, ECF 39. Although the FAC again asserts the First COA against "All Defendants," Plaintiff's amended First COA is clearly still a *Monell* claim against the County. The First COA is therefore once again dismissed with prejudice as to defendants Smith and Chancellor.

5

Defendants that all three claims are inadequately pled, as individually addressed below.

### A. *Monell* Claim Against the County (First COA)

Plaintiff asserts that the County's refusal to hold an additional hearing concerning Plaintiff's inclusion in the CWS/CMS deprived him of certain liberty interests without due process of law. Defendants contend that Plaintiff fails to state a claim for relief because he alleges no constitutional harm independently flowing from just the information in the CWS/CMS that was not adequately addressed and protected by the due process afforded him in his CANRA hearing, and further that he seeks relief that is not available. Def.'s Mot. 7-11. The Court agrees.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). To establish a violation of procedural due process, a plaintiff must allege (1) that a liberty or property interest has been interfered with by the State, and (2) the procedures attendant upon that deprivation were constitutionally inadequate. *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1184-85 (9th Cir. 2009) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)), *reversed on other grounds sub nom. Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29 (2010).

Courts have considered the due process rights of persons listed in the CACI as substantiated child abusers,[5] finding that there is a liberty interest under the stigma-plus test of *Paul v. Davis*, 424 U.S. 693 (1976), entitling them to some form of due process hearing. In *Humphries*, a case brought under 42 U.S.C. § 1983, parents whose child abuse charges were dismissed by the juvenile court as "not true" and who were found "factually innocent" of child abuse and felony torture charges by the criminal court challenged their remaining CACI record of "substantiated" child abuse so as to clear their names, only to learn that state law provided no procedure to challenge a CACI listing. 554 F.3d at 1180-83. The Ninth Circuit held that the parents had demonstrated that continued listing in the CACI deprived them of a liberty interest

---

[5] Prior to 2012, allegations determined to be "inconclusive" were also listed in the CACI.

under the stigma-plus test entitling them to notice and "some kind of hearing" to challenge the CACI listing. *Id.* at 1188, 1201. The Ninth Circuit limited its ruling to "those 'stigma-plus' situations where both the stigmatizing statement and the tangible burden on a legal right are statutorily created," relying on state law requiring state officers to input certain information into the CACI and mandating that certain entities consult with the CACI before conferring benefits. *Id.* at 1189.

Similarly, in *Burt v. County of Orange*, 120 Cal. App. 4th 273 (2004), which preceded *Humphries*, the state appellate court, considering a challenged CACI listing, determined that the pleading at issue did not satisfy the stigma-plus test. However, the court ruled that inclusion in the CACI of "substantiated" or "inconclusive" findings of suspected child abuse implicated familial and informational privacy rights under the state and federal constitutions. *Id.* at 284. Concluding that there was a right to timely rebut such findings in the CACI listing, the court deferred to the county agency to determine the scope of such proceedings. *Id.* at 286.

Thereafter, in *Castillo v. County of Los Angeles*, 959 F. Supp. 2d 1255 (C.D. Cal. 2013), the court reviewed the reach of a person's due process right to be heard upon inclusion in the related database known as the CWS/CMS. The law having changed so that "inconclusive" findings were no longer subject to CACI reporting, Mr. Castillo found that state law did not provide the right to a hearing regarding determinations only reported in the CWS/CMS and was thereby denied any opportunity to contest his own inclusion in the CWS/CMS based upon an "inconclusive" finding of suspected child abuse. *Id.* at 1257-58.

At summary judgment, relying on the Ninth Circuit's holding in *Humphries*, the district court determined that "inclusion in the CWS/CMS database without a due process mechanism for challenging that inclusion meets the stigma-plus test," basing its conclusion on record evidence of reputational harm as well as Mr. Castillo's declaration that he was considering adoption and continuing to volunteer for organizations that work with children, both of which would be stymied by inclusion in the CWS/CMS. *Id.* at 1260-61. Reasoning that the CWS/CMS database appears to serve a similar, albeit more limited, function as the CACI and that access to it is more limited—in fact "highly restricted"—but nonetheless subject to many exceptions, *id.* at 1260, the court

7

determined that "some sort of hearing" was required because there was a "substantial risk that California will deprive innocent individuals of their 'reputation-plus' by maintaining their files in CWS/CMS," *id.* at 1263. The court's concern was that other agencies were likely to rely on the "inconclusive" determination as evidence of wrongdoing without affording Mr. Castillo an adequate opportunity to rebut that evidence. *Id.* The court ultimately denied summary judgment because the county defendant had failed to demonstrate that it had in place adequate safeguards to protect Mr. Castillo's liberty interests.[6] *Id.* at 1262-64.

Common to all of the cases that considered the due process rights attendant to inclusion in the CACI and the CWS/CMS was the factual circumstance of a complete refusal to permit *any* hearing to contest the county's findings regarding the allegation of child abuse.

Here, it is undisputed that Plaintiff has already had a CANRA hearing concerning the substantiated child abuse allegation listed in the CACI. Rather, Plaintiff contends that he should have been afforded an additional hearing to challenge the information in the CWS/CMS. Plaintiff identifies two sets of liberty interests that are burdened by the CWS/CMS. First, Plaintiff asserts that inclusion in CWS/CMS will prevent him from "being bonded, getting high level jobs and/or working for the government, adoption, licensing, guardianship of children, and working with children or at schools where children are available" and that the inability to obtain a "Determination of Factual Innocence from the information contained in CWS/CMS" prevents him from getting his daughters back. *Id.* ¶ 16. The Court construes this as Plaintiff's "stigma-plus" argument under *Humphries* and *Paul*. *See* Pl.'s Opp. 7, ECF 44. Additionally, though not directly addressed in his brief, Plaintiff appears to be invoking a second protected liberty interest in a right to privacy that is also deprived when the County inputs information into the CWS/CMS that is disseminated statewide and to certain other related agencies.[7] *See id.* ¶¶ 46, 55, 71. The Court

---

[6] Relying on the holding in *Castillo*, the court in *Rubtsov v. Los Angeles Cnty. Dep't of Children and Family Servs.*, No. CV 14-01839 DDP(JCx), 2014 WL 2931167 (C.D. Cal. June 30, 2014), similarly ruled that there is a right to some sort of hearing regarding an individual's inclusion in the CWS/CMS where the father was denied *any* hearing related to his inclusion in both the CACI and the CWS/CMS. *Id.* at *3.

[7] Plaintiff alleges that the CWS/CMS "also feeds information directly into 500 plus other statewide databases, including but not limited to, Strategic Decision Making, and/or Risk

will address this privacy interest argument separately.

### i. Stigma-Plus

Procedural due process protections apply to reputational harm "only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Paul*, 424 U.S. at 711. In *Humphries*, the Ninth Circuit recognized a sufficient stigma-plus liberty interest arising out of a CACI listing because such listing tangibly burdened the plaintiffs' ability to obtain legal rights by implementing a system "whereby the CACI is reflexively consulted prior to the conferral of legal rights or benefits under California law, even where the statute does not necessarily require agencies to check the list on its face." *Humphries*, 554 F.3d at 1189. Plaintiff here argues that "the additional information in CWS/CMS that is not in CACI is sufficiently analogous to warrant a finding under *Humphries*'s reasoning that Plaintiff's inclusion in the CWS/CMS database without a due-process mechanism for challenging that inclusion meets the stigma-plus test." Pl.'s Opp. 7.

As an initial matter, Plaintiff's due process claim must be understood by reference to what it is not.[8] *See* Order at 8-11. Plaintiff acknowledges that he is not challenging the existence of the

---

Assessment Matrix system records, licensing, welfare, CACI, etc." FAC ¶ 23. Though Plaintiff repeats several times the allegation that the CWS/CMS information is in "500 plus databases," it is not clear how he arrived at this number, or what he means by "databases." For example, Plaintiff alleges that the information in the CWS/CMS "is available without a court order to all 58 Counties in California"—likely as a consequence of state law creating the database for the purpose of statewide accessibility—as well as "State and Federal government; DSS providers in and outside of California; schools; universities; law enforcement in all states; District Attorney in all states; and licensing agencies in and out of California, etc." *Id.* ¶ 22. It is unclear whether each of these other entities counts as a "database." Plaintiff also paradoxically alleges that the CWS/CMS feeds information into these other "500 plus databases," all of which are "in the direct control of Defendants," but that the State is the "repository of the CWS/CMS information." *Id.* ¶¶ 23, 42. It is thus not clear whether the County or the State of California—not a defendant in this action—is actually providing access to and disseminating the information in the CWS/CMS. For purposes of this motion, the Court will assume as true the essence of Plaintiff's grievance: that information in the CWS/CMS, though ostensibly a closed system, can be accessed by a large number of people and agencies involved in child welfare.

[8] For example, one possible interpretation of Plaintiff's claim based on the allegations in the FAC and his invocation of *Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014), could be that the County's failure to notify him of the CWS/CMS database deprived him of due process in the CANRA hearing. In essence, the CANRA hearing would have been rendered meaningless by the failure to disclose the existence of another database and to produce information from those other databases. That is in fact the argument that Plaintiff presented on appeal in the state court. *See* Pl.'s RJN Exh. 4. While that may give rise to a plausible due process violation, the outcome of

CWS/CMS as a whole, but rather the County's denial of his request to review and correct information about himself in the system. Pl.'s Opp. 6. Further, Plaintiff contends that the claims concerning his inclusion in the CWS/CMS in this action are different from the parallel state court action regarding CACI. In attempting to understand this claim, the Court might reasonably infer that Plaintiff's grievance with the County concerning the CWS/CMS is unrelated to the substantiated child abuse allegation that led to his listing in the CACI. *See* Pl.'s Resp. to OSC, ECF 50; *see also* Pl.'s Opp. 6-7. But such an inference does not seem to square with Plaintiff's repeated claim that somehow the denial of a second hearing to contest other material in his CWS/CMS file not utilized in his CANRA hearing deprived him of his opportunity to prove factual innocence or see his children. FAC ¶ 55. However, on review of a motion to dismiss, the Court will evaluate Plaintiff's claims as he alleges them, determining plausibility upon review of the entire claim. Thus, it appears that Plaintiff's due process claim is based on some interference with his liberty interests caused by "additional" or *other* information in the CWS/CMS that is unrelated to the information underlying the substantiated Santa Clara allegation. Pl.'s Opp. 7. To the extent that is Plaintiff's assertion, he has failed to state a claim.

Unlike the CACI, which lists alleged child abusers, "[t]he CWS/CMS is a statewide database used to track children with respect to allegations of abuse and neglect, juvenile dependency, child welfare services and out-of-home placement." *U.S. ex rel. McLean v. Cnty. of Santa Clara*, No. C05-01962 HRL, 2011 WL 5223076, at *17 (N.D. Cal. Oct. 31, 2011). The *Humphries* court acknowledged the benign nature of an investigatory file, finding only a cognizable constitutional injury if the state "goes one step further" and, for example, attaches legal consequences "to the mere listing in such files." *Humphries*, 554 F.3d at 1201 ("[t]he mere maintenance of such investigatory files apart from the CACI does not raise concerns under the Due Process Clause," but the CACI file was distinguishable because "[w]hat California has done

---

that claim would be dependent on whether the Superior Court grants Plaintiff's mandamus petition. Because Plaintiff contends that this case is not about the conduct of his CANRA hearing, and that he is not seeking a second bite at the apple with respect to the substantiated child abuse allegation that is the subject of the CANRA hearing, the Court must conclude that Plaintiff's due process claim lies elsewhere.

is not just maintain a central investigatory file, but attach legal consequences to the mere listing in such files"). Plaintiff's allegations do not plausibly suggest that the state or the County has attached legal consequence to information in the CWS/CMS that is *unrelated* to the substantiated allegation of child abuse against him that was reported to the CACI.

As Defendants rightly note, Plaintiff fails to allege any plausible interference with his liberty interests flowing from just the information in the CWS/CMS that is not related to the substantiated allegation reported to the CACI. *See* Def.'s Mot. 9-10. For example, Plaintiff identifies a number of things that he will be prevented from doing by inclusion in the CWS/CMS, such as adoption, guardianship of children, etc. FAC ¶ 16. Plaintiff fails to explain how each of these injuries is caused by any of the "additional" information in the CWS/CMS and not by the record of a substantiated child abuse allegation. *See* Pl.'s Opp. 5-7. To the extent the CWS/CMS contains personal information about Plaintiff, his friends, and his family, *see* FAC ¶¶ 20 and 37, it is unclear how any of this information interferes with his ability to obtain licensing, bonding, guardianship of children, or the myriad other liberty interests that Plaintiff alleges.

Further, and to the extent Plaintiff challenges the records of other abuse allegations made against him, those allegations were investigated and input into the CWS/CMS by other counties, and Plaintiff cannot state a claim against Santa Clara County based on the actions of other parties. FAC ¶ 14. To be sure, and accepting Plaintiff's allegations as true, the County's *use* of multiple referrals in the CWS/CMS to "raise his Risk Level," with the consequence that a higher risk assessment "determine[s] the risk level of subsequent referrals of abuse" might, under a different set of facts, be troubling. *See* FAC ¶ 25. Those allegations are ultimately not pertinent to the issues before this Court, however, because Plaintiff does not allege that the heightened risk assessment in the CWS/CMS has led to the improper substantiation of other child abuse allegations. Aside from the one substantiated allegation now listed in the CACI and subject to parallel state review proceedings (and not at issue before this Court), Plaintiff does not allege that there are any other improperly substantiated allegations in the CWS/CMS. Thus, Plaintiff has

failed to plausibly allege a stigma-plus injury from information residing only in the CWS/CMS.[9]

The Court must reiterate that this conclusion is based on the facts alleged, and on Plaintiff's assertion that he is not seeking to collaterally challenge the substantiated allegation listed in the CACI, for which he has received substantial process in the form of state administrative review and appeal proceedings.[10] Within this context, Plaintiff's reliance on *Castillo*, continues to be unavailing. Unlike the plaintiff in *Castillo*, Plaintiff has had a hearing to challenge the one stigmatizing allegation against him, and it is undisputed that were he to ultimately prevail on that allegation, the CWS/CMS would be updated to reflect an "inconclusive" or "unfounded" determination on that allegation. *See* Def.'s Mot. 5-6; Def.'s RJN Exh. A. While the Court does not foreclose the possibility that there may be some stigma-plus interest implicated by an "inconclusive" allegation, or even multiple "unfounded" allegations, reported only in the CWS/CMS sufficient to trigger a right to a hearing where none has been provided before, that is not the claim that Plaintiff has presented here. Because Plaintiff fails to identify any *other* stigmatizing information in the CWS/CMS that raises independent due process concerns not addressed in his CANRA hearing, Plaintiff has failed to state a procedural due process claim.

### ii. Right to Privacy

It is unclear from the FAC and from Plaintiff's opposition briefing whether he is asserting that the dissemination of information from the CWS/CMS also interferes with a right to privacy without due process of law. Plaintiff's citation to *Burt v. County of Orange* suggests that he is.

---

[9] Had Plaintiff's claim related to his "substantiated" CACI listing, stigma-plus would have been sufficiently alleged. Having disclaimed a challenge to that listing in this action (reserving that challenge to the parallel state court proceeding), Plaintiff has failed to show separate, distinct harm sufficient to satisfy the stigma-plus requirement.

[10] The Court notes only that Plaintiff's prayer for relief belies this argument, as he seeks relief in the form of an injunction requiring the County's DSS to issue a "Determination of Factual Innocence" or "conduct a full evidentiary hearing for Determination of Factual Innocence." FAC ¶ 97. Assuming the Court could even award such relief, Plaintiff would seek in this action to use the CWS/CMS to overturn the CANRA grievance hearing officer's determination that the Santa Clara County allegation was substantiated. Likewise, Plaintiff's request that the Court order removal of Plaintiff's name from the CWS/CMS or an opportunity to contest inclusion in the CWS/CMS is even farther afield, *see id.*, as it is unclear that state law grants the County the discretion to *not report* child abuse allegations into the CWS/CMS.

However, because this nascent privacy claim is not well alleged and not briefed, the Court will only briefly address the applicability of *Burt*.

*Burt* preceded *Humphries* and concerned a similar due process claim to seek administrative review of CACI listings.[11] The *Burt* court, finding no stigma-plus claim, reasoned that familial and informational privacy interests were implicated by the listing of a suspected child abuser in the CACI. *Id.* at 284-86. *Burt* found a federal right to familial privacy based on cases involving the reporting of *substantiated* allegations of child abuse. *See id.* at 284 (citing *Hodge v. Jones*, 31 F.3d 157 at 163 (4th Cir. 1994) and *Bohn v. Cnty. of Dakota*, 772 F.2d 1433, 1435 (8th Cir. 1985)). The Fourth Circuit in *Hodge* defined the familial right to privacy narrowly and specifically concluded that due process was *not* implicated by the state's retention of a case file after the abuse allegations against the plaintiff parents had been determined to be unfounded. *Hodge*, 31 F.3d 157, 166 (4th Cir. 1994) (analogizing retention of files to the maintenance of arrest and criminal records and noting that there is no automatic right to expungement); *accord Bohn*, 31 F.3d at 1434-39 (concluding no denial of due process after parents had hearing to challenge substantiated abuse allegation). Neither *Burt*, nor *Hodge*, nor *Bohn* stands for the proposition that Plaintiff's privacy interests are so impacted by investigatory files containing unfounded allegations that Plaintiff has a due process right to inspect that information or demand its removal from the CWS/CMS.[12]

In sum, Plaintiff's myriad arguments fail to persuade that he has a plausible claim for relief based on the facts alleged. The County substantiated a child abuse allegation against Plaintiff and afforded him an opportunity to challenge that determination in a neutral grievance hearing. The

---

[11] In *Humphries*, the plaintiffs identified a number of other liberty interests including the right to privacy discussed in Burt. The Ninth Circuit did not reach *Burt*'s applicability, noting only that the court had already found that plaintiffs were deprived of due process under the *Paul* stigma-plus test and that "it is not evident they would be entitled to any greater process or remedy if they successfully pressed these remaining liberty interests." *Humphries*, 554 F.3d at 1185 n.11.

[12] It is not clear whether Plaintiff believes the right to privacy prevents his inclusion in the CWS/CMS or simply prevents the County from broadly disseminating the CWS/CMS information to other databases and systems concerned with child welfare. To the extent he requests removal from the CWS/CMS altogether, it is not clear that he has a right to this relief under California law.

13

County did not inform Plaintiff that its investigatory file would be placed into the statewide CWS/CMS, nor did it grant Plaintiff's later request for an additional hearing to review and make corrections to the file in the CWS/CMS.  For all of the reasons stated above, Plaintiff has not plausibly alleged that this later refusal to allow a second administrative hearing deprived him of a cognizable liberty or property interest without due process of law.  Plaintiff has offered no amendment that could rescue this claim.  Defendants' Motion to Dismiss is accordingly GRANTED, with prejudice, as to Plaintiff's First COA.

### B. Section 1985(3) Conspiracy Claim Against All Defendants (Second COA)

In dismissing Plaintiff's original conspiracy claim, the Court gave leave to amend in order to allege a claim that is not based on privileged conduct and to clarify the statutory provision that Plaintiff seeks to invoke with such claim. Order at 13.  Plaintiff's amended Second COA again invokes § 1985(3) and asserts that Defendants conspired to "falsely substantiate allegations of abuse against [Plaintiff's] daughters," "intentionally injure and intentionally cause [P]laintiff extreme emotional suffering," and "deprive Plaintiff of his rights to full and equal benefits of all laws." FAC ¶ 87.

As the Court previously noted, an essential element of a § 1985(3) conspiracy claim is the "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See* Order at 12-13; *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  Defendants contend that the amended conspiracy claim still fails to allege facts giving rise to an inference that the alleged conspirators were motivated by racial animus, particularly because the conspiracy allegedly involved Plaintiff's ex-wife, who is also of Indian descent. Def.'s Mot. 11-12.  Plaintiff responds in conclusory fashion, and without citation to any supporting authority, that "[d]efendants can conspire based on race and still help another person of the same race, if they get paid enough." Pl.'s Opp. 12.  Plaintiff, however, fails to identify any facts upon which his assertion of discriminatory animus is founded.

Aside from minor amendments to allege Plaintiff and Defendants' respective races and the conclusory assertion that Defendants' actions were "due to Plaintiff's race and national origin,"

FAC ¶ 8, there are no factual allegations in the FAC to even suggest that Defendants conspired against Plaintiff because of his race. In fact, Plaintiff's own allegations would seem to eliminate racial animus as a motivation for the conspiracy, as he alleges that "the acts of Defendants were completed after the DSS investigations were closed; and done *solely* for the money paid to them and Chancellor's friends for therapy; to help the mother, Komal Rattan keep Prasad from his children." *Id.* ¶ 61 (emphasis added); *see also* Pl.'s Opp. 12 (arguing that Defendants perpetrated myriad wrongs "just to get money for helping the mother"). Thus, the Court agrees with Defendants that the clearly identified motivation for the alleged conspiracy is financial gain, and not discriminatory animus. *See* Def.'s Reply 7, ECF 45. As such, the allegations in the FAC again fall short of stating a plausible claim for relief pursuant to § 1985(3).[13] Defendants' Motion to Dismiss is therefore GRANTED, with prejudice, with respect to Plaintiff's Second COA.

### C. Intentional Infliction of Emotional Distress Claim Against All Defendants (Third COA)[14]

This Court dismissed Plaintiff's original IIED claim noting that it was likely barred by the statute of limitations and that the claim of emotional distress was not plausibly pled. Order at 13-15. Plaintiff's amended claim is still deficient.

Plaintiff's IIED claim appears to be based on the assertions that "Defendants' [sic] hid the

---

[13] Following Plaintiff's attempt in his opposition brief to clarify the gravamen of his conspiracy claim, Defendants note in reply that Plaintiff's various theories depend on either privileged conduct or conduct that occurred in 2010, outside of California's two year limitations period for personal injury actions. Def.'s Reply 6-7. Section 1985(3) claims are akin to personal injury actions, and courts apply the forum state's statute of limitations, *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991), along with that state's law regarding tolling, including equitable tolling. *See Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). Here, although the actions of the conspiracy occurred in 2010, Plaintiff alleges that did not learn of the meetings where Defendant Chancellor and his ex-wife hatched the alleged conspiracy until July and August 2013. FAC ¶ 64. Thus, it is not clear that the statute of limitations would necessarily bar Plaintiff's claim. In any event, Plaintiff's repeated failure to adequately allege racial animus is significantly more fatal to his § 1985(3) claim.

[14] Having disposed of Plaintiff's federal claims, the Court has the discretion to decline to exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367(c)(3). The Court retains jurisdiction over Plaintiff's IIED claim here because, having already reviewed the claim once, the generally accepted principles of "economy, convenience, fairness, and comity" would be ill-served by declining to exercise supplemental jurisdiction here. *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) *supplemented, as amended* (Oct. 1, 1997) 121 F.3d 714 (9th Cir. 1997).

information about the databases; hid the information contained in the databases; and how that inclusion affects Plaintiff." Pl.'s Opp. 12.  Even accepting these allegations as true, Defendants were under no affirmative duty to notify Plaintiff about a database established through public law. The lack of any prohibition in California Welfare & Institutions Code § 16501.5 precluding Defendants from notifying Plaintiff does not amount to an affirmative duty to do so, and does not render Defendants' actions "extreme and outrageous" absent allegations of active or intentional concealment.  Moreover, Plaintiff does not plausibly allege that the Defendants' failure to notify him of the CWS/CMS was the proximate cause of his emotional distress, as he also appears to argue that the supposed concealment was the reason why he did not experience emotional distress until August 2013, when he discovered his inclusion in the CWS/CMS.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (elements of IIED are "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct").

In short, Plaintiff alleges that Defendants failed to inform him that DSS's investigatory file was input into the statewide CWS/CMS database and that his later discovery of the existence of his information in this other database caused him severe emotional distress.  These allegations do not support a plausible claim for relief and, accordingly, Defendants' Motion to Dismiss is GRANTED, with prejudice, as to Plaintiff's Third COA.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED, and Plaintiff's FAC is dismissed with prejudice.  The Clerk of the Court shall close the case file.

**IT IS SO ORDERED.**

Dated: February 4, 2015

BETH LABSON FREEMAN
United States District Judge